Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. ALLEN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TUFIN SOFTWARE TECHNOLOGIES LTD., REUVEN KITOV, JACK WAKILEH, REUVEN HARRISON, OHAD FINKELSTEIN, EDOUARD CUKIERMAN, YAIR SHAMIR, RONNI ZEHAVI, YUVAL SHACHAR, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., JEFFERIES LLC, OPPENHEIMER & CO. INC., ROBERT W. BAIRD & CO. INCORPORATED, PIPER JAFFRAY & CO., STIFEL, NICOLAUS & COMPANY, INCORPORATED, WILLIAM BLAIR & COMPANY, L.L.C., and D.A. DAVIDSON & CO.,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff William J. Allen ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases published by and regarding Tufin Software Technologies Ltd. ("Tufin" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. Plaintiff brings this securities class action on behalf of persons who purchased or otherwise acquired Tufin's securities pursuant and/or traceable to the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with Tufin's April 2019 initial public offering (the "IPO" or "Offering"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act").

2. In April 2019, Defendants held the IPO, issuing approximately 7.7 million ordinary shares to the investing public at $14.00 per share, pursuant to the Registration Statement.

3. By the commencement of this action, Tufin's shares trade significantly below its IPO price. As a result, investors were damaged.

## JURISDICTION AND VENUE

4. The claims alleged herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 22 of the Securities Act (15 U.S.C. §77v).

6. This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)) as the alleged misstatements entered and subsequent damages took place within this judicial district.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of Tufin securities in this District.

## PARTIES

9. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

10. Defendant Tufin, develops, markets, and sells software-based solutions primarily in the United States, Europe, and Asia. It offers SecureTrack, SecureChange, and SecureApp products that enable enterprises to visualize, define, and enforce their security policy across heterogeneous networks, on premise and in the cloud. The Company also provides Orca and Iris products, which provide cloud-based security automation solutions in response to the growth of containers and cloud-native environments.

11. The Company is incorporated in Israel and its head office is located at 5 HaShalom Road, ToHa Tower, Tel Aviv, Israel 6789205. Tufin's securities trade on NASDAQ under the ticker symbol "TUFN". The Company's registered agent is Tufin Software North America, Inc. with its address at 2 Oliver Street, Suite 702, Boston, Massachusetts 02109-4901.

12. Defendant Reuven Kitov ("Kitov"), a Co-Founder of Tufin, served as the Company's Chief Executive Officer ("CEO") and Chairman of the Board at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

13. Defendant Jack Wakileh ("Wakileh") served as Tufin's Chief Financial Officer at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

3

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

14. Defendant Reuven Harrison ("Harrison"), a Co-Founder of Tufin, served as Tufin's Chief Technology Officer and a Director at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

15. Defendant Ohad Finkelstein ("Finkelstein") served as a Director of Tufin at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

16. Defendant Edouard Cukierman ("Cukierman") served as a Director of Tufin at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

17. Defendant Yair Shamir ("Shamir") served as a Director of Tufin at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

18. Defendant Ronni Zehavi ("Zehavi") served as a Director of Tufin at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

19. Defendant Yuval Shachar ("Shachar") served as a Director of Tufin at the time of the IPO, and signed or authorized the signing of the Offering Documents filed with the SEC.

20. Defendants Kitov, Wakileh, Harrison, Finkelstein, Cukierman, Shamir, Zehavi, and Shachar are collectively referred to herein as the "Individual Defendants."

21. The Defendants named in ¶¶ 12-19 are referred to herein as the "Individual Defendants." The Individual Defendants signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present favorable information to potential Tufin investors, all motivated by their own and the Company's financial interests.

22. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. J.P. Morgan's address is 277 Park Ave, New York, NY 10172.

23. Defendant Barclays Capital Inc. ("Barclays") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. Barclays' address is 745 7th Ave, New York, NY 10019.

24. Defendant Jefferies LLC ("Jefferies") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. Jefferies' address is 520 Madison Ave 10th floor, New York, NY 10022.

25. Defendant Oppenheimer & Co. Inc. ("Oppenheimer") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. Oppenheimer's address is 85 Broad St, New York, NY 10004.

26. Defendant Robert W. Baird & Co. Incorporated ("Baird") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. Baird's address is 1155 Avenue of the Americas, 16th Floor, New York, NY 10036.

27. Defendant Piper Jaffray & Co. ("Piper Jaffray") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. Piper Jaffray's address is 345 Park Ave #1200, New York, NY 10154.

28. Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. Stifel's address is 787 7th Avenue, 11th Floor, New York, NY 10019.

29. Defendant William Blair & Company, L.L.C. ("Blair") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. Blair's address is The William Blair Building, 150 North Riverside Plaza, Chicago, IL 60606.

30. Defendant D.A. Davidson & Co. ("Davidson") is an investment banking firm and acted as an underwriter of Tufin's IPO, helping to draft and disseminate the IPO documents. Davidson's address is 757 3rd Ave #1902, New York, NY 10017.

31. Defendants J.P. Morgan, Barclays, Jefferies, Oppenheimer, Baird, Evercore, Piper Jaffray, Stifel, Blair, and Davidson are referred to herein as the "Underwriter Defendants."

32. Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a) The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared millions of dollars in fees collectively. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Tufin, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b) The Underwriter Defendants also demanded and obtained an agreement from Tufin and the Individual Defendants that Tufin would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

(c) Representatives of the Underwriter Defendants also assisted Tufin and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Tufin, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning Tufin's most up-to-date operational and financial results and prospects.

(d) In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Tufin's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Tufin securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about Tufin would be made in the Registration Statement; and (iv) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Tufin's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Tufin's existing problems as detailed herein.

(e) The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

33. The Company, the Individual Defendants, and the Underwriter Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Tufin's False and/or Misleading Registration Statement

34. On March 6, 2019, Tufin filed a registration statement on Form F-1

with the SEC in connection with the IPO, which, after amendments, was declared effective on April 10, 2019.

36. On April 11, 2019, Tufin filed a prospectus for the IPO on Form 424B4, which formed part of the Registration Statement. That same day, Tufin commenced its IPO pursuant to the Offering Documents, and its securities began trading on the NYSE under the ticker symbol "TUFN."

36. For the fiscal year ended December 31, 2018, the Offering Documents reported revenues from the Americas of $48.27 million, comprising 56.8% of Tufin's total revenues, compared to $35.02 million, or 54.3% of total revenues, for December 31, 2017, showing superior revenue generation from the Americas relative to other geographic segments, and also substantial growth in that geographic segment.

37. The Offering Documents also touted that "[t]he Americas accounted for the majority of our revenues in each of the years ended December 31, 2017 and 2018, nearly all of which were generated in the United States" – i.e., North America.

38. The Offering Documents attributed increased revenues "primarily due to increased sales of our products and services from new customers . . . and existing customers . . . across all regions," which the Company stated "was most pronounced in the Americas."

39. Additionally, the Offering Documents touted Tufin's strong customer relationships and technology products which were a core part of the Company's growth strategy. For example, with respect to the quality of Tufin's customer

9
CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

relationships, the Offering Documents touted that, "[s]ince [Tufin's] inception, [the Company's] solutions have been purchased by over 2,000 customers in over 70 countries, including approximately 15% of the Global 2000"; that "[r]evenue generated from our Global 2000 customers, excluding maintenance renewals, represented an average of 65% of our total revenue over the fiscal years ended December 31, 2016 to 2018"; and that Defendants "believe we have a significant growth opportunity with Global 2000 customers that currently lack a security policy management solution or that use a competing product that lacks automation."

40. The Offering Documents also contained merely generic, boilerplate representations regarding seasonality in Tufin's sales, noting that Tufin's "sales cycle is long and unpredictable, which may cause significant fluctuations in [its] quarterly results of operations"; that "[t]he loss or delay of one or more large transactions in a quarter could impact our anticipated results of operations for that quarter and future quarters for which revenue from that transaction is delayed"; and that the Company "may not be able to accurately predict or forecast the timing of sales, which could cause our results to vary significantly from our expectations and the expectations of market analysts." These risk warnings were generic "catch-all" provisions which were not tailored to Tufin's actual known risks with respect to the sustainability of its customer relationships and financial prospects, particularly in North America.

41. The statements referenced in ¶¶34-40 above were materially false and/or misleading because they misrepresented and failed to disclose the

10
CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Tufin's customer relationships and growth metrics were overstated, particularly with respect to North America; (2) Tufin's business was deteriorating, primarily in North America; (3) as a result, Tufin's representations regarding its sustainable financial prospects were overly optimistic; and (4) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

42. Then on January 9, 2020, less than a year after the IPO, Tufin announced preliminary unaudited revenue and non-GAAP operating loss estimates for its fourth fiscal quarter of 2019. Tufin announced that it expected to report total revenue in the range of $29.5 million to $30.1 million, compared to its previous guidance of total revenue in the range of $34.0 million to $38.0 million, and that Tufin now anticipated non-GAAP operating loss in the range of $1.1 million to $2.6 million, compared to the Company's previous guidance of non-GAAP operating profit in the range of $0.0 million to $3.0 million. According to Defendant Kitov, "[t]he primary reason for our revenue shortfall was our inability to close a number of transactions, primarily in North America, that we anticipated would close but did not close by the end of the quarter."

43. Following this news, Tufin's share price fell $4.14 per share, or 24.04%, to close at $13.08 per share on January 9, 2020.

44. As of the time this Complaint was filed, Tufin ordinary shares

continue to trade significantly below the IPO price of $14.00 per share.

45. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action as a class action on behalf of all those who purchased Tufin securities pursuant and/or traceable to the Registration Statement (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tufin or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a) whether Defendants violated the Securities Act;

    b) whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and

    c) to what extent the members of the Class have sustained damages and the proper measure of damages.

51. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

# COUNT I

## Violations of Section 11 of the Securities Act

## Against All Defendants

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53. This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

54. The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

55. Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

56. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

57. By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

58. Plaintiff acquired Tufin securities pursuant to the Registration Statement.

59. At the time of their purchases of Tufin securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the

wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

60. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act

### Against All Defendants

61. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62. By means of the defective Prospectus, Defendants promoted, solicited, and sold Tufin securities to Plaintiff and other members of the Class.

63. The Prospectus for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased Tufin securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

64. Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus at the time Plaintiff acquired Tufin securities.

65. By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Tufin securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the securities issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their securities to Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

66. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT III

### Violations of Section 15 of the Securities Act

### Against the Individual Defendants

67. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68. This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against all Defendants except the Underwriter Defendants.

69. The Individual Defendants were controlling persons of Tufin by virtue of their positions as directors or senior officers of Tufin. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of Tufin. The Company controlled the Individual Defendants and all of Tufin's employees.

70. Tufin and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

71. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)   awarding damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)   awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 6, 2020                **THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS